ADELIA HARRIS ET AL. *v.* MARTHA J. McCANN ET AL.

1. RULE IN SHELLEY'S CASE. *Proviso to sec.* 24, *Hutchinson's Code,* p. 609 (*Act of June* 13, 1822).

    The rule in Shelley's case, as applied to lands, was not abrogated by the proviso to section 24 (act of June 13, 1822), Hutchinson's code, p. 609, but was in force in this state in 1854 and 1855. *Pressgrove* v. *Comfort,* 58 Miss., 644, approved and followed.

2. SAME. *Case at bar.*

    Under said rule, a will, dated in 1854, and probated in 1855, devising lands to a named devisee "for her natural life, and then at her death to the heirs of her body," invested a fee simple title in such devisee.

FROM the chancery court of Yazoo county.

HON. H. C. CONN, Chancellor.

The facts are fully stated in the briefs of counsel and in the opinion of the court.

*Miller, Smith & Hirsh,* for appellants.

Notwithstanding the numerous and perplexing questions presented for adjudication in this court, from the organization of the state until the termination of the civil war, relating to the ownership and descent of property, with decisions celebrated for the logic, reason and legal erudition therein displayed, nothing can be found in any case to warrant the conclusions reached in *Pressgrove* v. *Comfort,* 58 Miss., 644, and it is interesting to observe that the decision rendered in that case does not contain a single reference to or citation of any previous adjudication. On the contrary, a careful reading of the earlier cases warrants the assumption that since the enactment of section 24, p. 609, Hutchinson's code, June 13, 1822, the rule in Shelley's case, so far as it would affect devises and conveyances of

realty of the character now under consideration, was not in force in this state, and language such as employed in the will of Henry L. Ratcliff would only vest a life estate in the first taker. Said section is as follows:

" *What entails to be in fee discharged of conditions.*—Every estate in lands or slaves which now is or shall hereafter be created an estate in fee tail, shall be an estate in fee simple, and the same shall be discharged of the conditions annexed thereto by the common law, restraining alienations before the donee shall have issue, so that the donee or person in whom the conditional fee is vested, or shall vest, shall have the same power over the said estates as if they were pure and absolute fees; *Provided*, That any person may make a conveyance or devise of lands to a succession of donees then living and the heir or heirs of the donor in fee simple."

This section, and particularly its proviso, has in several noted cases been subjected to close attention and study by the court. The very fact that this court, during the protracted period mentioned, has never been called upon to condemn and destroy a provision similar to the one at bar, seems to indicate that the members of the legal profession in those days, many of whom had achieved national renown, and who had no superiors in learning, ability and legal knowledge in this or any other country, practically agreed that a devise of real estate to a person for natural life, and at death to the heirs of his or her body, was unassailable.

Among the earlier expressions is the opinion of the eminent jurist, Judge Clayton, in *Carroll* v. *Renich*, 7 Smed. & M., 798. After quoting the rule in Shelley's case, in the language employed in Preston on Estates, he says: "We extracted the rule from Preston at length, that we might place it in contrast and connection with the simple and plain provisions of our statute. The proviso to the section abolishing entails says, ' Provided, that any person may make a conveyance or devise of lands to a succession of donees then living, and the heir or heirs of the body of the remainderman, and, in default thereof,

to the right heirs of the donor in fee simple.' The boundaries of such limitations are here clearly defined.'' And he further says: '' We have a strong belief that the statute of this state has changed the rule on this subject, and relieved it from the intricacy and embarrassment which have perplexed the common law and involved it in minute and subtle distinctions and refinements.''

In the case then before the court, the instrument stipulated that certain slaves, the property of Rachel Renich, should be vested in a trustee, for the use of said Rachel during her natural life, and from the termination of that estate to the heirs of her body, and their heirs forever, and, in case she should die without such heirs, or, having heirs, they should die before they arrived at maturity, then to her brothers by her mother's side and their heirs forever. The case was decided according to the laws of Tennessee, but the remarks here quoted refer directly to the statutes of this state, and particularly to the proviso of section 24, which was incorporated in the opinion.

In the leading case of *Powell* v. *Brandon*, 24 Miss., 343, this proviso was again under consideration, and the court held: '' The proviso to section 24 of the act of June 13, 1822, Hutch. code, p. 609, relates exclusively to conveyances or devises of real estate, and cannot, therefore, affect the application of the rule to a conveyance or devise of slaves.''

In that case Gerard Brandon, by his last will, bequeathed all his real and personal estate of every kind whatever to third persons, as trustees, in trust that they would, immediately after his decease, take possession of all his property, and '' deliver to his daughter, Margaret Smith, certain land and slaves named therein, in trust, to permit said Margaret to have possession, occupy, work, and enjoy said land and slaves to her sole and separate benefit, during her natural life. And in trust after the decease of said Margaret, to put and continue in possession of said land and slaves the lineal descendants of the said Margaret to the latest posterity, with the same privileges which the said

Margaret shall have had during life, and on failure of lineal descendants, then in trust for the heirs generally of the testator, with the same privileges.'' The will contained bequests, in similar language, to all the children of the testator, and, among other bequests, is one in favor of Matthew Brandon, his son, in the following words: ''Also further in trust, as soon after my death as the debts of my son Matthew are paid, and they may deem prudent and pleasureable, to deliver to said Matthew certain slaves and a tract of land named in the will, and put the said Matthew in possession, on the same conditions and with the same privileges and limitations as before mentioned in respect to said Margaret and her lineal descendants.'' Matthew was placed in possession of said property, and occupied the same during his life, and died leaving no lineal descendants. Powell, a creditor of Matthew Brandon, contended that the will conveyed Brandon an estate in fee in the slaves, and therefore the same was subject to the payment of his debts. For Brandon's representatives it was urged that he only possessed an estate for life in the slaves, and as he died leaving no lineal descendants, they became the property, under the will, of the heirs of the testator. It was insisted, however, that the rule in Shelley's case had been repealed by the statute, and the court, in response to this argument, said: ''The counsel for the appellee insist that this repeal has taken place, and we have been referred to sections 24 and 26 of the act of June 13, 1822 (Hutch. code, pp. 609, 610), as containing the evidence thereof. By reference to section 24 it will be found, we think, to have little, if any, bearing upon the question. The object of that section was to abolish entails in both real estate and slaves, whether conveyed by deed or devise, and the proviso contained in the section has exclusive relation to the devise or conveyance of real estate, and cannot, therefore, have any influence upon the construction which must be placed upon a devise or conveyance of slaves.'' The inference, therefore, is strong, that if the title to the real estate had been involved, the court would have reached a different conclusion, and it is

pertinent to note that, although the will vested in Matthew Brandon not only slaves but a tract of land, no case was subsequently brought, of which we have information, questioning the validity of the will, so far as real estate is concerned. It therefore seems reasonable to assume that the distinguished counsel, in that and in subsequent cases presenting like questions, regarded such a devise of real estate as impregnable to attack.

Over three and a half years later, this court, in *Hampton* v. *Rather*, 30 Miss., 193, was called upon to construe a deed whereby the grantor conveyed to his "daughter and the heirs of her body forever" certain female slaves and their natural increase. The court said: "It is insisted by counsel that the intention of grantor to invest in his daughter an estate during her natural life is perfectly evident from the terms of the instrument, and hence it is contended that the limitations over by the use of the words 'heirs of her body' does not bring the case within the operation of the rule in Shelley's case, as that rule has been modified by the legislature and expounded and applied by the courts of this state. The court again carefully considered the scope and effect of this rule, and reviewed the preceding cases in this court upon the same subject, and announced, "In our opinion, therefore, the rule in Shelley's case, so far at least as personal property is concerned, has not been abolished." It seems a legitimate deduction therefrom that the court was of the opinion that the rule in Shelley's case did not apply to realty. This view is strengthened, if not absolutely justified, by the concluding paragraphs of the decision. In the justly famous case of *Jordon* v. *Roach*, 32 Miss., 481, which dealt with a will conveying both real and personal property, the limitations imposed upon the rule in Shelley's case by our statute were again defined. The court said: "If we stop at the proviso (Hutch. code, § 24, p. 609), we shall find that the power to control the disposition of his property, and to restrict the right of alienation in regard to it, is bounded by the time in which the owner shall cease to live, or in which he has parted with his

estate.    But the legislature thought, and thought wisely, that
the right of alienation might, consistently with sound policy, be
suspended for a limited period of time after a person, either by
conveyance or devise, has divested himself of the ownership of his
estate:    It had accordingly fixed that limit to a life or lives in
being, giving to the donor or devisor the right to limit the ulti-
mate fee to the heirs of the body of the remainderman, and, in
default of such heirs, to his own right heirs.    Within this limit
the partial interest or particular estates given to the successful
donees may, without doubt, be created by deed or limited by
executory devise.    Whatever interest the donor or devisor
might choose to give to the remainderman, where the estate is
conveyed to a succession of donees with a limitation over to the
heirs of his body, it is certain that it cannot be an estate of in-
heritance, as the heirs of the body of the remainderman must
take, if they take at all, as purchasers, and not as heirs.''

Taking this language of the court as a guide, it seems un-
questionable that Mr. Ratcliff had the right to first limit the
duration of the estate to a life then in being, that is, his sister,
Selina A. Wilder, and to limit the ultimate fee to the heirs of
her body, and that is what he did do.

In 1857 the court, in *Carradine* v. *Carradine*, 33 Miss., 698,
approved the rule in *Hampton* v. *Rather*, 30 Miss., 205, and
again affirmed that '' the rule in Shelley's case, at least so far
as personal property is concerned, is in force in this state,''
and thus again giving warrant to the assumption that in this
state the rule in Shelley's case was not in force so far as real
estate is concerned.

The author of the notes to the article on Shelley's case in
22 Am. & Eng. Enc. L., 521, published in 1893, after citing
the Mississippi cases, has reached the same conclusion.    He
says: '' The proviso to section 24, quoted above, has been consid-
ered an abolition of the rule, so far as it concerns real estate,
but is held not to include personal property.''    *Powell* v.
*Brandon*, 24 Miss., 343; *Hampton* v. *Rather*, 30 Miss., 193;

*Dibrell* v. *Carlisle*, 48 Miss., 691; *Carradine* v. *Carradine*, 33 Miss., 699.

If *Pressgrove* v. *Comfort, supra*, intended to repudiate the preceding decisions of this court, it is singular that it made no reference whatever to them. If it intended to nullify or limit the proviso to the twenty-fourth section, it is also extraordinary that it made no reference thereto. With the utmost deference and respect, we submit that if the statutes of this state affect in any way the rule of common law, that the court must construe the statute and determine these limitations or effect before it can substitute therefor the common law. It is needless to state that this court cannot repeal a statute, and if, in the rendering of a particular decision, the court has overlooked a statute, which, if considered, would have warranted a different conclusion, and the court's attention is called to that fact, remedy should be immediately applied, especially, as here, where the rights of innocent third parties are not in any manner infringed upon. There is nothing in the opinion of *Pressgrove* v. *Comfort* to show that the court considered any one of the cases hereinbefore mentioned, or the proviso to section 24. We therefore respectfully maintain that, if the earlier cases practically held the proviso to section 24 defeated the operation of the rule in Shelley's case, so far as real estate is concerned, or if the said proviso, without any such construction, by its terms, warranted such a devise as is contained in the will of Mr. Ratliff, then the will must be upheld and *Pressgrove* v. *Comfort* either overruled or limited wholly and solely to the case then before the court.

If, however, the court could hold that item three of the will did not of itself limit the estate of Selina A. Wilder to the term of her natural life, then we submit that, taking the will as a whole and giving due effect to all, and especially to its later provisions, and the manifest intent of the testator, the complainants still ought to recover. It is alleged in the bill, and admitted by the demurrer, that the lands in controversy consti-

tuted the plantation upon which Henry L. Ratliff resided. Item six of the will provides: ''The said negro slaves above given and bequeathed to my said sister and my said nieces, Adelia and Julia, shall be retained, kept and worked upon the plantation upon which I now reside, and that the slaves given and bequeathed to my said nieces shall be retained and worked with the slaves given to my said sister, without any charge being made against my said nieces for rent of land or use of stock or tools, whilst they remain sole and unmarried.''

He therefore created a trust estate, and expressly required that the slaves given to his nieces and his sister should all be retained and worked upon the plantation upon which he resided, without any charge, whilst his nieces remained sole and unmarried. It is elementary law that the intent of the testator must control unless it violates some positive rule of law.

If Mr. Ratliff had a right to create such a trust, and had a right to require his plantation, with the slaves thereon, to be kept intact for a period prescribed, then such provision is absolutely inconsistent with the right of his sister to dispose of the property in fee, and, being a later provision in the will, should control. The very fact that the *jus disponendi* is thus fettered clearly shows that the fee never intended to vest in his sister, and that her rights terminated at death.

*Edward Drenning* and *McWillie & Thompson*, for appellee, Kate McCann.

When the mind of the court is directed to the date of the will, 1854, and its probation, 1855, it will be manifest that the rule in Shelley's case is applicable to the cause, and that appellants are without interest in the lands. The rule in Shelley's case was the law of Mississippi until a date long after the probation of the will of Ratliff, and we have but to inquire what that rule was in order to dispose of the question presented by the present appeal. The best statement of the rule of which we have knowledge is found in Lawson's Leading Cases Simplified

(Equity and Constitutional Law), 4.　It is in these words: "The principle which it [Shelley's case] announced was that where an ancestor takes an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs or the heirs of his body, the word heirs is a word of limitation, and not of purchase, so that the ancestor takes the whole estate comprised in the term—that is to say, in the first case, an estate in fee simple; in the second, an estate in fee tail."

Chancellor Kent, in his commentaries, vol. 4, marginal page 215, tells us that the rule was stated in Shelley's case, and in several other cases in the Year-book, to be: "That when the ancestor, by any gift or conveyance, taketh an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs, in fee or in tail, the heirs are words of limitation of the estate, and not words of purchase." Preston, in his essay on the rule, as quoted by Kent from Preston on Estates, gives us, among other definitions, one which Chancellor Kent thought to be full and accurate, and it was in these words: "When a person takes an estate of freehold, legally or equitably, under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs, or heirs of his body, as a class of persons to take in succession, from generation to generation, the limitation to his heirs entitled the ancestor to the whole estate."

Kent goes on to say: "The word heirs, or heirs of the body, create a remainder in fee, or in tail, which the law, to prevent an abeyance, vests in the ancestor, who is tenant for life, and by the conjunction of the two estates he becomes tenant in fee or in tail; and whether the ancestor takes the freehold by express limitation or by resulting use or by implication of law, in either case, the subsequent remainder to his heirs unites with, and is executed on, his estate for life."

When we turn to Mississippi authority, we have *Pressgrove* v. *Comfort*, 58 Miss., 644. This cause decides that the rule in Shelley's case was in force in this state at the date of the will there being considered (1847); and if the rule was the law in Mississippi in 1847, it was the law of this state in 1855, there being no statute between said dates changing the rule. The opinion of Mr. Justice Chalmers, in *Pressgrove* v. *Comfort*, *supra*, is so complete and perfect a presentation of the law of the case at bar, that nothing remains for us but to cite that opinion. Since that case is directly assailed by our adversaries, we, however, respectfully refer the court to the earlier case of *Jordon* v. *Roach*, 32 Miss., 481.

Taking up the rule in Shelley's case as announced by Lawson, and applying each branch of it to the will under consideration, we find that the complainant's ancestor, sister of the testator, by the third item thereof, took an estate of freehold. We also find in the same gift an effort to limit the estate immediately to the heirs of her body; and, in such case, the rule is that the word "heirs" is a word of limitation and not of purchase, so that the ancestor of complainants took the whole estate in fee simple, and, therefore, the deeds of conveyance from her, under which defendants hold, are perfectly valid, and defeat complainants. Applying the rule as announced by Kent, or Preston's statement of it, in the same way, we reach the same result.

It must never be forgotten that the rule in Shelley's case is not a rule of intention, but of property, and it applies in every case regardless of the intention of the testator. This completely answers the contention of appellants predicated of the item of the will providing for keeping property together, etc. *Silva* v. *Hopkinson* (Illinois), 41 Northeastern Reporter, 1013.

The principle upon which Shelley's case was based, was this: No man could take, by inheritance, a greater estate than had been possessed by the ancestor from whom the inheritance came. When, therefore, by a deed or a will, property was given to a

person for life, and to his " heirs " or to the " heirs of his body,"
as remaindermen, necessarily the first donor took the fee, since
the heirs are those designated by law to inherit, and unless they
inherit they are not "heirs." Existing law determines who
are "heirs," and not the law at the date of the deed or will.
The trouble came from the fact that the testators used the word
" heirs " in a popular rather that a legal sense, and the rule in
Shelley's case was finally abolished, in order to effectuate actual
intents; while it was in force actual intent was not of conse-
quence, so long as the "heirs" took by inheritance from the
first taker.    *Conger* v. *Lowe*, 9 L. R. A., 165; *Doebler's appeal*,
64 Pa. St., 9.

A rule of property is involved which should not be lightly
changed.    In addition to the case of *Pressgrove* v. *Comfort*, 58
Miss., 644, we also refer the court to the case of *Carlisle* v.
*Dibrell*, 48 Miss., 705, 706, which is equally decisive of the
particular question in controversy. Here are two decisions of
this court rendered at dates with an interval of more than
ten years between the first and the last, and both sustaining the
contention of the appellees, notwithstanding the act of 1822.
In *Pressgrove* v. *Comfort*, the act of 1822, and the very section
relied upon by counsel for appellants, was cited in the brief of
counsel there, and was, of course, before the court, although
not referred to in its opinion, and in *Dibrell* v. *Carlisle*, the
provision of the code of 1857, essentially the same as the act of
1822, was cited by the court as authority for its conclusion.
It would seem from this that the court was of the opinion that
the statute in question, the entire act of 1822, did what it was
designed to do—that is to say, prevent the entailment of estates.
We cannot say upon what rules of statutory construction the
court reached the conclusion stated, but it did reach it, and this
much at least may be said, (1) that to give effect to the proviso
would be virtually to negative the general purpose of the statute,
and (2) that the exception made by the proviso applies by its
terms only when there is a succession of donees, and not to the

case of a single donee, as in *Pressgrove* v. *Comfort*, *Dibrell* v. *Carlisle*, and the case at bar.

As we have seen, the real, underlying principle of the rule in Shelley's case is found in the meaning of the word "heirs." One cannot take from his ancestor by inheritance an estate that the ancestor did not own, and where the deed or will prescribes that the taking shall be by inheritance, the fee must of necessity be in the first taker. It is otherwise where there is a succession of donees, whether two or more than two, for, in such case, the intent to create an inheritance is negatived by the existence of more than one intermediate estate. If it be said that the construction of the statute, according to its very terms, empowering a conveyance or devise only to a succession of donees, etc., is a narrow one, we submit that the whole act is in derogation of the common law, and must be strictly construed, and that the same strictness of construction should be visited upon the proviso, which negatives the general intent of the act. These are familiar rules of statutory construction. Sutherland on Statutory Construction, sec. 216 *et seq.* But whether these decisions be correct or not, they are deliberate, well-considered expressions of this court as to the law of the state in such cases, and constitute, moreover, a rule of property. Under such circumstances they will not be departed from except for the gravest reasons. Who can say how many pieces of land in the state have been bought and sold on the faith of these decisions of this court? This court maintains rules of property with much vigor. *Boon* v. *Bowers*, 30 Miss., 256; *Shelton* v. *Hamilton*, 23 Miss., 496; *Davis* v. *Holberg*, 59 Miss., 362; *Lombard* v. *Lombard*, 57 Miss., 174; 23 Am. & Eng. Enc. L., pp. 28, 29.

*Barnett & Thompson*, for appellees other than Kate McCann.

This case is ruled in favor of appellees by *Pressgrove* v. *Comfort*, 58 Miss., 644, wherefore appellants seek to attack that case. But that case has formed a recognized rule of property for seventeen years, and the courts are therefore bound to fol-

low it, even if incorrect. Argument for appellants is, in effect, that the proviso to section 24, p. 609, Hutch. code, apart from the body of the statute, reproduced in § 2436, code 1892, abolished the rule in Shelley's case, so far as realty was concerned, from the date of its enactment, June 13, 1822, and that the terms of item three of Ratliff's will are authorized by the proviso. The conclusion from these propositions is that, by item three of the will, Mrs. Wilder took only an estate for life, and complainants, the heirs of her body, the remainder. Much reliance is placed on certain early dicta and intimations found in *Carroll* v. *Renich*, 7 Smed. & M., 798, and *Kirby* v. *Calhoun*, 8 Smed. & M., 471. Some favor for the argument is found in the language of Clayton, J., in those cases, but it is now settled that the opinion therein expressed is incorrect, and a widely different construction of the proviso firmly established. It was so admitted by Judge Clayton himself, the author of the earlier view, in his article on "Limitation of Estates," Geo. Dig., p. 502. Neither *Powell* v. *Brandon*, 24 Miss., 343, nor *Hampton* v. *Rather*, 30 Miss., 193, relied on by counsel, support them, as neither case attempts to construe the proviso, merely holding that it did not apply to personalty. Both cases, besides, overrule *Kirby* v. *Calhoun*, *supra*, and expressly affirmed that the rule in Shelley's case existed as a part of the judicial system of this state, except as modified by the statute. But the statute received its final construction in *Jordan* v. *Roach*, 32 Miss., 481, followed by *Cannon* v. *Barry*, 59 Miss., 289. *Pressgrove* v. *Comfort* was the logical result of the two decisions last named, which fully justify and support it. These cases settle the doctrine that the proviso of the statute does not and cannot affect the operation of the rule in Shelley's case; that it is a mere statutory rule against perpetuities, the only effect of which is to prescribe a legislative measure of time, during which the owner may direct the disposition of his estate; that it does not attempt to prescribe what limitations, within that period, the owner shall make, nor what character of estates he

shall create, but only requires that, no matter what estates he may create in the period allowed, they shall end at the time indicated, and then vest as a fee simple.   This being so, it follows that the rule in Shelley's case, which deals only with the character of estates, but not at all with the time when they must vest, cannot be affected by the proviso. ˙ When the legislature regulated the latter, the former was not before it, and was not intended to be affected.   In brief, the cases cited demonstrate that the proviso is not a statute of entailments at all, but a mere prohibition of remote limitations.   The argument to the contrary is not new.   It was made in *Jordan* v. *Roach*, but was successfully answered by Judge Wiley P. Harris, as counsel, and by the opinion of the court in that case. But that case does not stop here.   It further holds that the statute of wills, and statute *de donis*, never were in force in Mississippi, and that estates tail and executory devises never existed with us.   The effect of this holding. is far-reaching. It follows from it that the limitations known as executory devises and estates tail must be governed by the common law, with the added statutory prohibition against remote limitations. So, a gift to A for life, remainder to the heirs of his body, is first to be construed according to the common law as it existed before the statute *de donis*, and the prohibition of section 24 (proviso), p. 609, Hutch. code, applied.   By the common law before the statute *de donis* (Stat. Westm. II., 13 Edw. I., c. 1, anno. 1285), such a limitation resulted in an estate tail in the first taker by virtue of the rule in Shelley's case.   Such estate being void for remoteness under the proviso to section 24, and being further enlarged into a fee simple by the body of that section, the first taker, under our law, owns the whole estate. Mrs. Wilder, therefore, by this will took a fee, and her conveyance was valid.

The exclusion by the territorial legislature, in 1807, of the statute *de donis* from operation in Mississippi, did not affect the rule in Shelley's case, which had existed at common law inde-

pendently of that statute.  The application of the rule to estates
tail after the statute was but an assertion of the broader doctrine
immemorially existing, that a conveyance of any freehold estate
to an ancestor, remainder, by the same instrument, limited to
heirs or heirs of the body, would result in an estate tail or fee
simple in the first donee.  In its entirety, therefore, the rule
is much broader than its mere application to remainders after
life estates to heirs of the body of life tenants.  Upon what
ground can it be contended that, by section 24, acts 1822, the
rule was meant to be wholly abolished, when it must be admitted
that the larger part of the rule (that part which applied to the
gift of any freehold, not merely a life estate, to an ancestor
with remainder to heirs generally) was left untouched by the
statute?  Will counsel contend that, from 1822 to 1880, the
rule was in force as to ultimate limitations to general heirs, and
abrogated as to those to heirs of the body?  But this must be the
consequence of their position, and it proves the correctness of
ours.  And why was it necessary to abolish the rule in 1880,
if it had been already done in 1822?  To the mind of the dis-
tinguished compiler of the code of 1880, the act of 1822 had
not had such effect.´  We think, further, that the universal
opinion of the profession has been that the rule was in full
force in this state until abolished in 1880. · We add that Mr.
Gray (Perpetuities, 728–752), among the American statutes on
perpetuities, classes the proviso to section 24, and that it is
closely similar to many others there found.  Those of Connect-
icut and Ohio, like ours, have no express reference to time,
their terms merely relating to persons, as, indeed, does the
common law rule, as usually stated, but all are none the less
mere regulations of time.

The second branch of counsel's argument on the statute is
stated by them as follows:  '' If a person can make a conveyance
or devise of lands, to a succession of donees then living, and
the heir or heirs of the body of the remaindermen, it seems con-
clusive that he may convey to one donee then living, and the

heirs of the body of such donee. The greater includes the lesser." The fallacy of this argument is manifest under the decisions already cited. If it be true, as we have seen, that the proviso to section 24 did not authorize any limitations whatever, its sole object being to say, negatively, that no limitations should go beyond the period of time fixed thereby, if the particular limitations mentioned are not to be literally followed, but may be changed at pleasure within that limit of time (*Cannon* v. *Barry*), how can it be said that, because the devise in this case is within the mere words of the proviso, it is therefore good? The answer is, that you may make limitations either identical with or different from those mentioned in the proviso, but that is not the test of their validity. They may even be in form the same as those mentioned, yet, if the words used indicate that they are to go beyond the limit of time fixed, they are void. Now, it was declared, in *Jordan* v. *Roach*, that the estate must vest, in fee simple, at the expiration of the lives in being, as an estate of purchase, not of inheritance. But this devise vests the estate, by appropriate words, as a life estate of inheritance—estate tail—at the expiration of a life in being. Therefore, the remainder limited is void, and Mrs. Wilder took the fee. There is no limitation over, which, by section 26, act of 1822, could help the devise, and the result is inevitable. *Carlisle* v. *Dibrell*, 48 Miss., 705; *Caldwell* v. *Willis*, 57 Miss., 555. The words "heirs of the body" conclusively importing an estate tail, the presumption is, that testator's intention was accordingly, nothing appearing in the will to change their meaning. *Irvine* v. *Newlin*, 63 Miss., 192. It is true that the same words are used in the proviso. But that does not change their meaning. The proviso is not a statute of construction. It does not change the meaning of words. It deals with things, not words. The statute to which it belongs was designed to disallow estate tail. So much is certain. *Jordan* v. *Roach*. Therefore, it cannot authorize them. If an estate tail is created by the words used, it is void, even though in the words of the statute. The words of the proviso

do not permit an estate tail. That, would make it absurd and repugnant to the body of the statute. The proviso merely fixes a period of time, and does not authorize any specific limitations. But even if it did, still this devise would fail, because it does not vest the fee simple at the expiration of the life in being, but creates an indefinite estate tail by the use of the words "heirs of the body." The cases cited show that those words meant an estate tail before the statute, and mean it now. In the statute alone, as construed in *Jordan* v. *Roach*, they mean a fee simple. It is not enough to use the mere language of the statute. Its meaning, not its mere words, must be followed. This devise violates its true meaning, even if we accept appellants' theory that its meaning sanctions limitations. That it does not, we have heretofore attempted to show. But, even on appellants' theory, *Jordan* v. *Roach* rules that this devise cannot be one of those authorized, for the reason indicated.

Argued orally by *Joseph Hirsh*, for appellants, and by *J. B. Thompson* and *R. H. Thompson*, for their respective clients, appellees.

TERRAL, J., delivered the opinion of the court.

In 1855 Henry L. Ratliff died, owning a large and valuable real estate in Yazoo county. The third item of his will reads thus: "I give, bequeath and devise to my sister [Selina A. Wilder], for her natural life, and then at her death to the heirs of her body, all the real estate of which I am seized and possessed and which I own." In 1859 Mrs. Wilder, in consideration of $10,000, made a conveyance of the fee of said lands to Rachel M. McCann; in 1894 Mrs. Wilder died, and the complainants (her children) bring this suit against the heirs of Mrs. McCann for the recovery of said lands and of the rents and profits of them since the death of Mrs. Wilder. A demurrer to the bill was sustained, and the complainants appeal. The question is, whether the third item of the will of Henry Ratliff, above

set out, conveys a life estate or a fee to Mrs. Wilder. That Mrs. Wilder took a fee in the real estate in question seems to us to be settled by *Pressgrove* v. *Comfort*, 58 Miss., 644.

*The judgment below is affirmed.*